## GEORGE W. MURPHY

### v.

## JACOB F. DAUGHERTY.

SLANDER—EVIDENCE REBUTTING JUSTIFICATION.—In an action for slander, the defendant pleaded justification, and introduced evidence tending to prove the truth of the words spoken. *Held,* that the plaintiff was entitled to introduce evidence tending to rebut the testimony given in justification.

APPEAL from the Circuit Court of Adams county; the Hon. J. H. WILLIAMS, Judge, presiding. Opinion filed January 17, 1882.

Mr. J. C. THOMPSON and Messrs. WHEAT & MARCY, for appellant; that the speaking of the words charged constituted slander, cited 2 Starkie on Slander, *84; Robinson v. Keyser, 2 Foster, 323; Upham v. Dickinson, 50 Ill. 97; Miller v. Johnson, 79 Ill. 58; Smith v. Mills, 15 Vt. 245; Parker v. McQueen, 8 B. Mon. 16; Carmichael v. Shielt, 21 Ind. 61; Fowler v. Bowen, 30 N. Y. 24; Leycroft v. Dunker, Cro. Car. 317; Carney v. Tully, 74 Ill. 375; Huckle v. Reynolds, 7 C. B. *114.

Mr. GEORGE W. FOGG, for appellee; that where the plaintiff had ceased to exercise his alleged trade, the words are not actionable on the ground that they were spoken of him in his trade or business, cited Bellamy v. Burch, 1 M. & W. 690; Doyley v. Roberts, 2 Bing. 835.

The words must be spoken of plaintiff in his official or busi-

ness character: Van Tassel v. Cofron, 1 Denio, 252; Oakley v. Farrington, 1 Johns. Cas. 130; Lumley v. Alldon, Cr. & J. 301.

Words actionable *per se* will not support an action when accompanied by other words showing that they were not used to impute a crime: Brite v. Gill, 2 T. B. Mon. 66; Dexter v. Taber, 12 Johns. 240; Norton v. Ladd, 5 N. H. 203; Van Rensselaer v. Dole, 1 Johns. Cas. 279; McKey v. Ingalls, 4 Scam. 33.

If the plaintiff, knowing by the pleas what the defense will do, chooses to close his case and trust to evidence in reply, he will be closely restricted to such evidence as goes exactly to answer the case made by defendant in justification: Pierpont v. Sapland, 1 C. & P. 447; Brown v. Murray, Ry. & M. 254; 3 Chitty's Pr. 905; 3 Phillips' Ev. 577; Starkie on Slander, *725.

DAVIS, J. This was an action on the case for slander. The amended declaration consisted of three counts. The first count sets forth a variety of actionable words, which are alleged to have been spoken by appellee of and concerning appellant, and of his circumstances, and of his trade and business as an undertaker, and with the malicious intention of injuring and destroying the good name, reputation and credit of appellant in his said trade and business. Among the slanderous words alleged to have been spoken are "thief," "swindler" and "cheat."

The second count alleges that appellee charged appellant with having swindled Michael Daugherty, the father of appellee, and with having made false entries on the books of a firm engaged in business of undertaking, composed of appellant and Michael Daugherty.

The third count charges that appellee called appellant a thief, intending thereby to charge him with larceny.

Appellee filed two pleas, one of "not guilty," to the entire declaration, and the other averring the truth of all the words spoken, except certain words designated in the plea. To this plea appellant replied *de injuria*, and upon these pleadings the case was tried. A verdict of "not guilty" was found by

the jury, and a judgment for costs against appellant was rendered by the court, to reverse which this appeal was taken.

The principal question presented by the record is whether the court properly excluded from the jury the evidence offered by appellant to rebut the evidence given to the jury to sustain appellee's plea of justification.

The testimony given to the jury for appellant in his opening, was confined strictly to such proof as was necessary to make out his case as set out in his declaration; such as proof of the business in which he had been engaged and with whom, and under what partnership name it had been carried on, and from whom he had obtained credit before and since the formation and dissolution of co-partnership, and also proof of the speaking of the several alleged slanderous words as charged in the declaration.

Appellee then proceeded to give all his evidence tending to prove substantially the several charges of fraudulent conduct and false book-keeping set up in his plea of justification. In his plea it is averred that appellant did swindle his father, Michael Daugherty, "by wrongfully and fraudulently charging and entering in said firm books against said firm as assets of said co-partnership for the purpose of fraudulently and corruptly inducing his said co-partner, the said Michael Daugherty, to suppose and believe the same to be real, actual and *bona fide* assets of said firm, a large sum of money already paid out and expended in carrying on said co-partnership business, amounting, to wit, to the sum of $1,588, which said sum of money was then and there rightly and properly chargeable only in the expense account of said co-partnership; and also by corruptly and fraudulently entering as real and *bona fide* assets of said firm in its books of account at their face and par value, old, overdue, stale and uncollectable accounts due and owing to said co-partnership, as of their face or par value, when he then and there knew that the same were in fact worth no more than one-half that amount, which said amounts so entered and set down as assets of said firm amounted, to wit, to the sum of $6,168.72." "Also by wrongfully and fraudulently charging and entering in said firm books of account

against said firm as wages of his son for services as book-keeper a large sum of money, to wit, the sum of $905."

Included in the evidence given to the jury to sustain the plea of justification, appellee was sworn as a witness and testified. He was asked, "What about the charge of $905 in the entry against said firm of Daugherty and Murphy for wages of his son as book-keeper and otherwise; did the firm ever employ his son to keep the books?" His answer was, "No, sir; our books don't show any account with his son in any way; his name is not on our books; he was not employed by the firm; there was no account with him whatever. This charge of $905 affected my father's interest in the firm; it drew so much out of the assets; it went into the pocket of the man who got credit for it." He was also asked, "What about the charge of $1,588; how did that affect injuriously your father's interest in the firm?" He answered, "That was all figured in as assets; it was really drawn out on Michael Daugherty's account; it injuriously affected him by increasing the assets; it was carried into the assets; Murphy did not carry into the assets what he had drawn out. I did not figure out the face value of the bills and accounts in the books; a good many of them have realized but fifteen or twenty per cent. of their face; this helped to swell the assets; it falsified the real assets of the firm by $1,000 at least; he (Michael Daugherty) was defrauded by means of the entries referred to here; by these entries Murphy induced my father to sign an agreement to pay him a large sum of money. By the entries on the books he induced my father to sign him over a large sum of money, when my father owed him nothing; he did this by showing the assets of the firm to be larger than they really were."

When appellee rested, appellant sought to give to the jury his evidence in reply, to disprove the charges set up by appellee in his plea of justification, and which the evidence he had given to the jury tended to sustain. But the court excluded the most material part of such rebutting testimony from the jury. The testimony thus excluded was tendered by appellant, to show that Forest Murphy, the son of appellant, rendered

services for the firm of Daugherty and Murphy; that he received wages for such services, and the amount so received; that Michael Daugherty knew he was at work for such firm, and what wages he was to receive for such work, and that Michael Daugherty, before the dissolution of the firm, knew there had been charged up in favor of his father and against the firm, nine hundred and five dollars for his services. It was also offered to show what was included as assets of the accounts of the firm; and why appellant put in the accounts in favor of the firm as assets at their face value. Also to show that the Daughertys had examined and looked over the books before the settlement, and that the mode and manner in which the accounts had been inserted in the books, and the accounts in favor of the firm had been put into the books as assets of the firm, had been explained to Michael Daugherty before the settlement. And also to show that before the settlement between appellant and Michael Daugherty, the latter had been informed that the accounts in favor of the firm, had been put into the books as assets of the firm at their face value. The testimony excluded was also offered to explain and qualify that given to the jury on the part of appellee.

We think the court erred in excluding this testimony. Serious and very damaging charges had been made by appellee, and he had been permitted to give evidence to the jury which very strongly tended to prove appellant guilty of the charges made. But appellant was not permitted to disprove these charges, or explain the transactions between the parties, which, if explained, might have led the jury to a different conclusion from the one reached.

It is claimed by appellee that the testimony was properly excluded, because appellant did not confine himself in his opening to testimony to prove the allegations contained in his declaration, but went far beyond this, and offered part of his evidence in the first instance to rebut the justification plead by appellee. We do not so view the testimony. The testimony of appellant, pages 69 to 72 inclusive, of the record, cited by appellee, is in no sense testimony rebutting the justification. The same may be said of the testimony of Pigot,

on pages 85, 87 and 88.   His testimony in chief was strictly confined to proof of averments in the declaration, and the part on page 88 was brought out in re-examining him on matter brought out by appellee on cross-examination; and the object of that examination was not to rebut the plea, but to show that the conversation in which appellee said the money was accounted for by Murphy, was one subsequent to the one in which appellee charged appellant with stealing the money. And the same may also be said of the testimony of Benneson, Williamson and Aldrich.

For the error committed in excluding this testimony, the judgment must be reversed and the cause remanded.

Judgment reversed.